### DREYFUSS et al. v. WHITTLE et al.*
(No. 6798.)

(Court of Civil Appeals of Texas. San Anto-
nio. Nov. 1, 1922. Rehearing Denied
Nov. 15, 1922.)

1. Husband and wife ⚌274(1) — Daughter
held not entitled to all of community prop-
erty as against a son of surviving widow by a
former marriage.

The surviving widow has the right, and it
is her duty, to control and manage the com-
munity property, and, where the community es-
tate consisted of the family homestead, in
which the widow had a life estate, and she was
prudent and diligent in the preservation of the
property, and frugal and provident in the use
and application of the fruits and revenues de-
rived therefrom, a daughter was not entitled
to more than one-half of the property as
against a son of the widow by a former mar-
riage, to whom the widow bequeathed all her
property.

2. Husband and wife ⚌274(1)—Appropriation
of personal property of the community estate
by surviving widow held not to amount to a
parol partition.

Appropriation by the surviving widow of all
the personal property of the community estate
did not amount to a parol partition by which

she elected to take the personal property as
her portion, and leave the real property as the
portion of her daughter, where the widow used
the money derived from the personal property
to improve the real estate, which she preserved
intact until her death.

Appeal from District Court, Maverick
County; Joseph Jones, Judge.

Action by Mrs. Mary Dreyfuss and another
against Henry Whittle and others. From a
judgment granting partial relief, plaintiffs
appeal. Affirmed.

Sanford & Wright, of Eagle Pass, for ap-
pellants.

Ben V. King, of Eagle Pass, for appellees.

SMITH, J. In 1870 Nicolas Burks mar-
ried Albertina Whittle, the mother of appel-
lee, Henry Whittle, by a former marriage.
To the union was born a daughter, who after-
wards became Mary Dreyfuss, appellant
herein. A few months after this marriage,
Burks purchased a lot in the city of Eagle
Pass, and erected a dwelling and storehouse
thereon. The family resided on the premises,
which became the homestead, and operated a
mercantile establishment thereon, as well.

In 1873 the daughter was born, and a year
later the father died, survived by his wife
and the young daughter. Mrs. Burks was
appointed as administratrix of the estate,
which consisted of real property, the lot and
improvements, which was appraised at $2,-
250, and of personal property, the stock of
merchandise and fixtures, appraised at $7,-
917. In 1876, after ascertainment and pay-
ment of the community debts, the final ac-
count of Mrs. Burks was filed and approved,
and she was discharged as administratrix.
The final account showed the estate to con-
sist of the same real property, valued, as be-
fore, at $2,250, and the stock of merchandise
and fixtures, valued at $6,709. All of this
property was shown to belong to the commu-
nity estate, and all of it was on the home-
stead premises.

Following her discharge as administratrix
Mrs. Burks, without qualifying as community
survivor, as provided by statute, continued
in possession and control of the estate, and
operated the mercantile business on the home
premises. In 1879, or possibly in 1880, the
store building and its contents were totally
destroyed by fire. Mrs. Burks collected the
insurance from this loss, but, instead of us-
ing it to purchase another stock of goods,
she applied the insurance money to the con-
struction of a new building on the premises.
This building was rented to others, and the
rents thus derived were used in the support
and maintenance of the family, and the up-
keep of the premises.

The daughter, Mary, reached her majority
in 1894, and married in 1896. She had all

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused December 20, 1922.

the time theretofore resided in the home with her mother, who supported her, and provided her with whatever education she received. After the daughter married, Mrs. Burks continued to collect and use the rent from the home premises, which she maintained as her homestead up to the time of her death, which occurred in 1921, although during the last year of her life she resided with her children, most of the time with her son, who is appellee here. She never made any accounting to her daughter; the latter never demanded any accounting, but acquiesced, at least by her silence, in the dominion her mother exercised over the estate and the revenue derived therefrom.

Mrs. Burks, who never remarried, died in 1921, leaving a will in which she devised all her property to Henry Whittle, her son by a former marriage. By the terms of this will Whittle was made independent executor of the estate, which he is administering.

This suit was filed by the daughter, Mary Dreyfuss, to recover the whole of the community estate as it now exists, which consists alone of the real property and improvements, and for all the rents accruing since Mrs. Burks' death. For cause of action Mrs. Dreyfuss, who is joined, pro forma, by her husband, alleged the main facts set out above, and that by reason of those facts her mother had appropriated the whole of the personal property belonging to the community estate, which appropriation amounted to a parol partition, by which she elected to take the personal property as her portion of the estate, leaving the real property as the portion of her daughter, which parol partition became fixed by the daughter's affirmance thereof, as evidenced by this suit. It is further contended by Mrs. Dreyfuss that as her mother had appropriated the personal property, which was of much greater value than the real property at the time of its appropriation, the daughter was entitled to an adjustment of equities, and that under such adjustment she was entitled to the whole of the real property, regardless of the devise to Henry Whittle. The cause was tried before the court without a jury, and judgment was rendered decreeing the property and accrued rents to each of the parties, in equal shares undivided. Mrs. Dreyfuss alone appeals, still contending that she is entitled to all the property and rents. In fact, Whittle disclaimed in the court below as to half of the property and rents, and of course was satisfied with the judgment.

[1] The parties have in their briefs raised many questions of law, and have discussed them with ability and vigor, but no purpose could be served by following them here, except to unnecessarily prolong this opinion, and perhaps confuse the disposition. As we understand it, the case presents the very simple question of whether Mrs. Burks, as community survivor, faithfully or unfaithfully executed the trust imposed upon her in the control, management, and preservation of the corpus of the community estate. The premises involved was the family homestead, in which Mrs. Burks had a life tenancy. The whole of the property belonged to the community, and she, as the survivor, had the right, and it was her duty, to control and manage the property, and to use the fruits and revenues thereof, or so much of them as was reasonably necessary to the purpose, in the support and maintenance of the property and of her family and herself. In this undertaking, so far as the record here shows, she was prudent and diligent in the preservation of the property, and frugal and provident in the use and application of the fruits and revenues derived therefrom. There is no evidence of any waste or misapplication of the estate or revenues. She continued the mercantile business until, through no carelessness on her part, it was destroyed by fire, and when she collected the insurance money she immediately reinvested it in permanent improvements upon the real property, thereby adding to the permanent value of the estate, and at the same time creating a source of revenue much more certain than the profits from an ordinary mercantile business. By her course the whole community estate has been preserved substantially intact for the use of the heir and legatee of the respective community partners. We think the record not only fails to show that Mrs. Burks misappropriated, wasted, or negligently caused or permitted the estate to deteriorate in value, but that she used very sound judgment in executing the trust thrust upon her by the death of her husband. If she had taken the proceeds derived from the mercantile business, or the insurance money derived from its loss by fire, and projected it into a distinct and independent undertaking, and wasted or diverted it to improvident channels or purposes, thereby losing it, cause of complaint might have accrued to those dependent upon the trust. But such is not the case, and we know of no rule or statute which would operate to entitle the daughter to a readjustment of equities by which she would take more than her one-half of the estate, keeping in mind her mother's homestead and survivorship rights. Akin v. Jefferson, 65 Tex. 137.

[2] Nor do we think that her course as survivor imports a parol partition by Mrs. Burks, as appellant contends. Certainly there was no express or agreed partition by which she elected to take the personal property as her portion of the estate, and her method of managing the estate raised no implication of, but, on the contrary, negatived, such election, since it is conceded that she

used the money derived from the personal property to improve the real property, the whole of which she preserved intact.

We think the case was fairly tried and decided below, and the judgment must be affirmed.

